Jeremy L. Bordelon, OSB No. 160789
jeremy@evergreendisability.com
Evergreen Disability Law
465 Northeast 181st Ave., No. 500
Portland, Oregon 97230
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| DWAYNE BRANDON,<br>　　　Plaintiff,<br><br>　　　v.<br><br>HEALTH NET HEALTH PLAN<br>OF OREGON, INC.,<br>　　　Defendant. | Civil No.　3:19-cv-356<br><br>COMPLAINT FOR ERISA<br>BREACH OF FIDUCIARY DUTIES |

Plaintiff, Dwayne Brandon, makes the following representations to the Court for the purpose of obtaining relief from Defendant's breaches of fiduciary duties under an ERISA employee benefit plan, and for Defendant's other violations of the Employee Retirement Security Act of 1974 ("ERISA"):

**JURISDICTION AND VENUE**

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e) (ERISA § 502(e)).  Plaintiff's claims "relate to" an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. § 1001 et seq. and the subject benefit plan constitutes a "plan under ERISA."

2. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1 provide a mechanism for administrative or internal appeal of

PLAINTIFF'S COMPLAINT　　　　　　　　　1

benefits denials. In this case, the plan's mandatory appeals have been exhausted and this matter is now properly before this court for judicial review.

3. Venue is proper within the District of Oregon pursuant to 29 U.S.C. § 1132(e)(2), as the district in which the breach took place, and the district in which the plan was administered. Specifically, Mr. Brandon resided in this district at the time defendant breached the fiduciary duties owed to him.

## PARTIES

4. Plaintiff, Dwayne Brandon (hereinafter, "Plaintiff"), is currently and was at all times relevant to this case a resident of Damascus, Clackamas County, Oregon.

5. Defendant Health Net Health Plan of Oregon, Inc. ("Health Net"), is an insurance company domiciled in the State of Oregon, and is authorized to transact the business of insurance in this state.

6. Health Net may be served with process in Oregon by and through its registered agent for service of process, CT Corporation System, 780 Commercial Street Southeast, Suite 100, Salem, Oregon 97301.

## FACTS

7. Plaintiff was a participant in an employer-based group health plan (the "Plan") insured by Health Net.

8. As an employer-based group health plan, the Plan is governed by ERISA.

9. Health Net both insures and administers benefits under the Plan.

10. Health Net provides participating employee groups with a "Member Handbook."

11. The member handbook described certain terms of the Plan, and stated that if participants had "any questions about your health plan or its benefits, we're here to help." A 1-800 number to call was provided along with this statement.

12. Plaintiff intended to obtain services from an healthcare provider that was designated as "out-of-network" for his Health Net Plan.

13. Prior to undergoing these services, on April 18, 2018, Plaintiff and his wife contacted Health Net via its 1-800 number in an attempt to determine what their financial responsibility would be for these out-of-network services.

14. In that phone call, the Brandons asked whether their understanding was correct that the calendar year out-of-pocket maximum for their Plan was $4,000.

15. The Health Net agent confirmed that $4,000 was indeed the out-of-pocket maximum for Plaintiff's Plan.

16. This concept of an "out-of-pocket maximum" was discussed several times during the April 18, 2018 call.

17. The Brandons made clear to the Health Net agent that they were trying to determine the total amount that Plaintiff would have to pay for his upcoming out-of-network surgery.

18. In the April 18, 2018 call, the Health Net agent also recited Plan language which included the term "maximum allowable amount."

19. The term "maximum allowable amount" is not included as one of the "Words to Know" in Health Net's member handbook.

20. In addition to the member handbook, there is a Group Contract which governs the provision of benefits under the Plan.

21. The Group Contract contains a section defining the term "Maximum Allowable Amount."

22. That section of the Group Contract does not state the Maximum Allowable Amount for any particular procedure, but states that "You should contact the Customer Contact Center if you wish to confirm the covered expenses for any treatment or procedure you are considering."

23. The Customer Contact Center phone number is the number the Brandons called on April 18, 2018.

24. In that phone call, the Brandons provided the Health Net agent with the specific diagnostic code and procedure code for the planned procedure.

25. The Health Net agent did not explain what a "maximum allowable amount" was, or how it might affect Plaintiff's bill for his upcoming surgery.

26. It was clear at the conclusion of the April 18, 2018 call that the Brandons believed the maximum possible bill for his upcoming surgery would be limited by his Plan's "out of pocket maximum."

27. It was clear at the conclusion of the April 18, 2018 call that the Brandons did not understand how the Plan's "maximum allowable amount" provision could affect the bill for out-of-network services.

28. Health Net failed to adequately explain the terms of the Plan in response to a direct inquiry by the Plaintiff.

29. After the April 18, 2018 call, Mr. Brandon believed he could go forward with his planned out-of-network surgery, and that his financial exposure would be limited to the Plan's "out of pocket maximum," to the extent he had not already paid that amount for prior services.

30. Plaintiff did go forward with his planned out-of-network surgery.

31. The surgery was performed on April 30, 2018, with a resulting hospital stay through May 4, 2018.

32. Prior to undergoing this surgery, Plaintiff had already reached the Plan's out-of-pocket maximum of $4,000.

33. The total amount charged by Plaintiff's out-of-network providers for services associated with the surgery was $107,382.64.

34. Health Net paid or otherwise adjusted this bill by $34,924.93.

35. Health Net issued an Explanation of Benefits ("EOB") on May 24, 2018, stating that the "amount not allowed" for these services, in total, was $70,541.99.

36. Of that total, $67,441.99 was listed on the EOB as "Charge exceeds the allowed amount under the member's plan for services rendered by this non-contracted provider."

37. On Plaintiff's bill from his provider, after accounting for payments or adjustments by Health Net, the amount shown as due from the Plaintiff himself was $71,868.03.

**FIRST CAUSE OF ACTION**
**FOR BREACH OF ERISA FIDUCIARY DUTIES PURSUANT TO 29 U.S.C. §§ 1132(a)(3)**

38. The ERISA statute, at 29 U.S.C. 1132(a)(3), provides that a civil action may be brought by a plan participant or beneficiary to obtain appropriate equitable relief to redress violations of ERISA.

39. Plaintiff is a participant in an ERISA plan.

40. Health Net is a fiduciary for that ERISA plan.

41. Health Net acts as fiduciary for the Plan and its participants when it conveys information about benefits to the Plan's participants.

42. Health Net owes fiduciary duties to Plan participants, including Plaintiff.

43. The fiduciary duties Health Net owes to Plaintiff include the common law duty of loyalty, which requires fiduciaries to deal fairly and honestly with beneficiaries.

44. As a fiduciary, Health Net also owed Plaintiff a duty to convey complete, thorough, and accurate information that was material to his circumstance.

45. Plaintiff clearly conveyed a question to Health Net, expressing a desire to learn about any Plan provisions which might affect his benefits his planned out-of-network procedure.

46. Health Net inadequately responded to that request for information.

47. Health Net knew or should have known that Plaintiff did not understand all of the plan provisions which would affect his benefits for his planned procedure.

48. By failing to adequately respond to Plaintiff's request for information, Health Net breached its fiduciary duties to Plaintiff.

49. As a result of Health Net's breach of fiduciary duties, Plaintiff was harmed in the amount of excess bill his medical provider charged him, as well as resulting costs and expenses.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff requests that this Court grant him the following relief in this case:

**On Plaintiff's First Cause of Action:**

1. A finding in favor of Plaintiff against the Defendant;

2. Equitable remedies in the form of surcharge, or such other form as the Court may find appropriate, in the amount of $71,868.03 (the amount not covered by Health Net), or such other amount as is proven by the evidence;

3. Prejudgment and postjudgment interest;

4. Plaintiff's reasonable attorney fees and costs; and

5. Such other relief as this court deems just and proper.

Dated this 8th day of March, 2019.

                                              Respectfully submitted,

                                              BY:    *s/Jeremy L. Bordelon*
                                                             Jeremy L. Bordelon, OSB No. 160789